1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WILLIAM YOUNG SUTHERLAND,

11              Plaintiff,                    No. CIV S-09-2391 WBS DAD P

12        vs.

13   S. HERRMANN, et al.,

14              Defendants.                   FINDINGS & RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil

17   rights action pursuant to 42 U.S.C. § 1983.  In his complaint, plaintiff alleges that on March 3,

18   2008, the defendant correctional officers violated his rights under the Eighth Amendment by

19   placing him in wrist restraints that were too tight and failing to adjust those restraints over a five

20   hour period while they transported from California State Prison-Sacramento ("CSP-Sacramento")

21   to University of California Davis Medical Center ("U.C. Davis Medical Center") for treatment.

22              Pending before the court is the motion of defendants Spinks and Parmar for

23   summary judgment in their favor filed on April 25, 2012 (Doc. No. 95).[1]  Therein, defendants

24   Spinks and Parmar contend that they are entitled to summary judgment because they were not in

25   _____

26        [1] Two other defendants, Hermann and Scicluna, have not moved for summary judgment.

                                                 1

1  the van in which the events that gave rise to this civil action occurred and were unaware of any

2  complaints by plaintiff about his handcuffing.  Defendants Spinks and Parmar argue that they are

3  entitled to summary judgment in their favor on the merits of plaintiff's Eighth Amendment claim

4  and, alternatively, on the grounds of qualified immunity from liability.  Plaintiff has opposed the

5  motion (Doc. No. 100).  By order filed August 14, 2012 (Doc. No. 102), plaintiff was provided

6  with the notice required by Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), Rand v. Rowland, 154

7  F.3d 952, 957 (9th Cir. 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir.

8  1988) with respect to the opposing of such motions, and was granted an opportunity to file a

9  supplemental opposition to defendants' pending motion.  Plaintiff has not filed a supplemental

10  opposition.

**ANALYSIS**

11

12  I.  Legal Standards Applicable to a Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56

13              Summary judgment is appropriate when it is demonstrated that there exists "no

14  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

15  matter of law."  Fed. R. Civ. P. 56(c).

16              Under summary judgment practice, the moving party

17              always bears the initial responsibility of informing the district court
              of the basis for its motion, and identifying those portions of "the
18              pleadings, depositions, answers to interrogatories, and admissions
              on file, together with the affidavits, if any," which it believes
19              demonstrate the absence of a genuine issue of material fact.

20  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

21  nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

22  judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

23  to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

24  after adequate time for discovery and upon motion, against a party who fails to make a showing

25  sufficient to establish the existence of an element essential to that party's case, and on which that

26  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

2

concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

1    any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson,

2    477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the

3    court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.

4    Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

5    produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen

6    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

7    1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

8    show that there is some metaphysical doubt as to the material facts . . . . Where the record taken

9    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

10   'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

11           As referred to above, both on October 1, 2009 and again on August 14, 2012, the

12   court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the

13   Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en

14   banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

15   II.  Discussion

16        A.  Facts

17             1.  Undisputed Facts

18             At all times relevant to this action, plaintiff was an inmate housed at CSP-

19   Sacramento. (Defs' Statement of Undisputed Facts In Support of Mot. for Summ. J. (DUF), filed

20   April 25, 2012 (Doc. No. 95), at ¶¶ 1-2.) On March 3, 2008, plaintiff was transported to and

21   from U.C. Davis Medical Center for an appointment. (Doc. No. 95 at ¶ 6.) All four defendants

22   in this action were present during the transport. Id. at ¶ 7. The moving defendants, defendants

23   Spinks and Parmar, are female. (Id. at ¶ 5.) Defendants Hermann and Scicluna are male. (Id. at

24   ¶ 8.) Defendants Hermann and Scicluna rode in the transportation van in which plaintiff rode to

25   and from U.C. Davis. (Id. at ¶ 9.) Defendants Spinks and Parmar drove in a so-called "chase"

26   car, which followed the van to and from U.C. Davis. (Id.)

4

1    Before plaintiff was taken to the transportation van, a female correctional officer

2    placed him in wrist restraints.  (Id. at ¶ 10.)  At his deposition, plaintiff described the officer who

3    placed him in wrist restraints as "white" with "light brown to light brown hair like dirty dish

4    water, possibly a reddish tint to it.  She was also one of the officers in the escort vehicle."

5    (Excerpt of Pl.'s Dep, attached as Defs.' Ex. D in Supp. of Mot. for Summ. J., filed April 25,

6    2012 (Doc. No. 95), at 15:21-25.)  Plaintiff avers that the other transportation officer was "dark

7    skined [sic] possibly of Persian Descent."  (Pl.'s Decl. in Opp'n of Defence's [sic] Mot. for

8    Summ. J., filed June 4, 2012 (Doc. No. 100), at ¶ 10.)  He also testified at his deposition that the

9    other officer in the escort vehicle had dark hair and that he "would recognize them easily apart."

10   (Id. at 15:25-16:1.)  Plaintiff subsequently testified at his deposition that he was "almost certain"

11   but "not positive" that the officer who placed him in handcuffs was one of the escort officers, and

12   that he was "almost certain, because when I got back to RNR she walked in with us."  (Id. at

13   16:7-16:9.)  Plaintiff contends that he told the female officer that the wrist restraints were too

14   tight.  (DUF at ¶ 11.)  Plaintiff also testified at his deposition that only one of the two female

15   officers was implicated in the events complained of, and that he would actually "drop any

16   complaints" against the other one but he just doesn't "know who is who."  (Id. at 38:12-14.)

17       Plaintiff was escorted to the transport van by defendant Hermann.  (Id. at ¶ 10.)

18   Plaintiff contends that he told defendant Hermann the wrist restraints that had been placed upon

19   him were too tight and that defendant Hermann ignored his complaints.  (Id. at ¶ 12.)  Plaintiff

20   also contends that he and other inmates accompanying him complained that the wrists restraints

21   were too tight during the ride to and from U.C. Davis, and while at the medical appointment.  (Id.

22   at ¶¶13-15.)  Defendant Hermann was present during plaintiff's medical appointment.  (Id. at ¶

23   14.)

24       2.  Disputed Facts

25       The parties dispute whether plaintiff complained more than once about the

26   tightness of the wrist restraints to the female correctional officer who placed him in those

5

1  restraints.  In opposition to the pending motion for summary judgment, plaintiff has presented his

2  own declaration, in which he avers in relevant part that he told the "White Female Transportation

3  Officer" that the restraints were too tight when she placed them on him, and that "she then

4  applied the Black Box device which she placed on and which pulled my wrists at an extreamly

5  [sic] unnatural angle which caused the restraints to dig into my wrist causing even more pain

6  which I did inform her of but my pleas were ignored."  (Pl.'s Decl. (Doc. No. 100), at ¶ 6.)

7  Plaintiff also avers that this "White Female Transport Officer" instructed him to return to the

8  group holding tank after he was placed in restraints, and that plaintiff followed "her instructions

9  while I continued to complain about the pain that I was feeling due to the restraints being too

10  tight and what the Black Box was doing."  (Id. at ¶ 7.  See also id. at ¶ 20.)

11         B.  Legal Standards

12             Plaintiff's claim arises under the Eighth Amendment, implicating the prohibition

13  on excessive use of force.  Excessive use of force violates the Eighth Amendment when force is

14  applied "maliciously and sadistically for the very purpose of causing harm."  Whitley v. Albers,

15  475 U.S. 312, 320-21 (1986).  The court looks at several factors to determine whether a

16  particular application of force violates the Eighth Amendment, including the extent of the

17  inmate's injury as well as "the need for application of force, the relationship between the need

18  and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and

19  'any efforts made to temper the severity of a forceful response.'"  Hudson v. McMillian, 503 U.S.

20  1, 7 (1992) (quoting Whitley at 321).

21         C.  Defendants' Motion

22             Defendants Spinks and Parmar seek summary judgment on the merits of

23  plaintiff's Eighth Amendment claim on the grounds that the undisputed facts show that neither

24  was aware that plaintiff was experiencing discomfort from the wrist restraints because neither

25  were present when any of plaintiff's complaints regrading the restraints were made.  Defendants

26  Spinks and Parmar also contend that neither of them can be held liable for applying the wrist

1    restraints because plaintiff does not know the identity of the female officer who applied the

2    restraints.  Finally, defendants contend that even if one of them had been identified by plaintiff as

3    being involved, the undisputed evidence shows that plaintiff only complained once in the

4    presence of the female officer and a single complaint is insufficient to implicate the Eighth

5    Amendment.

6                It is clear from review of the record that there are disputed issues of fact that

7    preclude summary judgment for either defendant Spinks or defendant Parmar.  It is undisputed

8    that defendants Spinks and Parmar participated in the March 3, 2008 transport of plaintiff from

9    CSP-Sacramento to U.C. Davis Medical Center by driving the "chase car" behind the

10   transportation van.  In opposition to defendants' motion, plaintiff has presented evidence,

11   sufficient to create a triable issue of material fact, that either defendant Spinks or defendant

12   Parmar was the correctional officer who placed plaintiff in wrist restraints at CSP-Sacramento

13   and that plaintiff complained to this person not just once, but repeatedly that the wrist restraints

14   were too tight.  (See Pl.'s Decl. (Doc. No. 100), at ¶¶ 6-7.)  Plaintiff also avers that he

15              "do[es] not remember being escorted anywhere by the Female
                Transportation team but upon receiving the transcripts from the
16              investigation into my Inmate/Parolee Appeal 602 Staff Complaint
                the Female Transportation team, Transportation Officer M.
17              SPINKS does state that Officer A.Parmar and her [sic] did infact
                [sic] escort me to see a doctor and that she, Transportation Officer
18              M. SPINKS, did remove one of the restraints to allow for the
                taking of blood, this could possibly be when I made known to the
19              doctor that they were too tight, and if Transportation Officers M.
                Spinks and A. Parmar did escort me then they would have without
20              a doubt been aware of my condition.

21   Id. at ¶ 13.

22              Viewed in the light most favorable to plaintiff, there is evidence before the court

23   that one of the two moving defendants placed plaintiff in wrist restraints for transportation to a

24   medical appointment and that those restraints were applied too tightly, causing plaintiff

25   unnecessary pain.  There was no threat posed by plaintiff, and no need for extra tightness in the

26   restraints beyond the regular security requirements of the medical transport.  There is also

1  evidence before the court that plaintiff complained repeatedly to the female officer who had

2  placed him in wrist restraints that they were too tight, but she ignored his complaints and did

3  nothing to adjust the restraints.  Assessed against the Hudson factors discussed above, this

4  evidence, if believed, might cause a reasonable jury to find that the female officer who placed

5  plaintiff in wrist restraints violated his rights under the Eighth Amendment.  Plaintiff has come

6  forward with evidence of identifying information about the physical appearance of both female

7  transportation officers, including relevant distinctions between the officer who placed him in

8  restraints and the other officer.  Defendants have the burden of demonstrating that they are

9  entitled to summary judgment, and neither has presented any evidence of their physical

10  appearance.  Depending on its content, such evidence, if presented, might have demonstrated the

11  entitlement of one or both of defendants Spinks or Parmar to summary judgment if only one, or

12  neither, matched the physical description provided by plaintiff of the officer who placed him in

13  restraints.  In the absence of such evidence, however, the court finds that plaintiff has presented

14  sufficient evidence of disputed material issues of fact thus requiring a trial on his Eighth

15  Amendment claim against both defendants Spinks and Parmar.

16         Defendants Spinks and Parmar also contend that they are entitled to qualified

17  immunity from liability on plaintiff's Eighth Amendment claim.  "Government officials enjoy

18  qualified immunity from civil damages unless their conduct violates 'clearly established statutory

19  or constitutional rights of which a reasonable person would have known.'"  Jeffers v. Gomez,

20  267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

21  When a court is presented with a qualified immunity defense, the central questions are (1)

22  whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the

23  defendant's conduct violated a statutory or constitutional right and (2) whether the right at issue

24  was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201 (2001).  "'The relevant,

25  dispositive inquiry in determining whether a right is clearly established is whether it would be

26  clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'

1 Saucier, 533 U.S. at 202, 121 S.Ct. 2151.  The key inquiry is whether a reasonable person could

2 have believed his actions lawful at the time they were undertaken.  Anderson v. Creighton, 483

3 U.S. 635, 646, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)."  Bull v. City and County of San

4 Francisco, 595 F.3d 964, 1002 (9th Cir. 2010).

5            The contention by defendants Spinks and Parmar that they are entitled to qualified

6 immunity with respect to plaintiff's Eighth Amendment claim is predicated on their assertion that

7 neither was "was aware of Plaintiff's alleged discomfort."  (Defs.' Mot. (Doc. No. 100), at 8.)

8 The same disputed issues of material fact that preclude summary judgment for either defendant

9 on the merits of plaintiff's Eighth Amendment claim discussed above, also preclude a finding

10 that either defendant is entitled to summary judgment on qualified immunity grounds.  If

11 plaintiff's version of the facts is accepted as true, one or more of the defendants had notice that

12 force was being applied to him "maliciously and sadistically for the very purpose of causing

13 harm" in violation of the Eighth Amendment.  Whitley, 475 U.S. at 320-21.  See also Hudson,

14 503 U.S. at 7.  Moreover, the state of the law in 2008, when the alleged constitutional violation

15 took place, would have given defendants fair warning that such use of unnecessary force was

16 unlawful.  Accordingly, defendants' motion for summary judgment on qualified immunity

17 grounds should also be denied.

18                                        CONCLUSION

19            For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that:

20            1.  The April 25, 2012 motion for summary judgment filed on behalf of

21 defendants Spinks and Parmar (Doc. No. 95) be denied; and

22            2.  The matter be referred back to the undersigned for further proceedings.

23            These findings and recommendations are submitted to the United States District

24 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen

25 days after being served with these findings and recommendations, any party may file written

26 objections with the court and serve a copy on all parties.  Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 4, 2013.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:12
suth09cv2391.msj

10